IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN DE DIOS CORTES,                *
                                    *
        Plaintiff                   *
                                    *
vs.                                 *        CIVIL NO. 98-2286 (JP)
                                    *
METLIFE, INC.,                      *
                                    *
        Defendant                   *
_____ *

## OPINION AND ORDER

**I.    INTRODUCTION**

The Court has before it Defendant's Memorandum of Law in Compliance with Court Order (addressing issue of standard of review) (**docket No. 16**); and Plaintiff's Response to Memorandums of Defendant (docket No. 22); Defendant's Motion for Summary Judgment (**docket No. 36**); Plaintiff's Opposition to Defendant's Motion [for Summary Judgment] (docket No. 42); Plaintiff's Motion for Summary Judgment (**docket No. 37**); and Defendant's Opposition thereto (docket No. 41).

Plaintiff Juan De Dios Cortés ("Cortés") brings this action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, as a covered employee under the Sears Roebuck & Co. Group Long Term Disability Insurance Plan ("the Plan"), an employee welfare benefit plan governed by ERISA. Cortés asserts that Defendant MetLife, Inc. ("MetLife"), as plan administrator, wrongfully denied him Long Term Disability benefits under the Plan, in contravention of ERISA section 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B). MetLife, on the other hand, maintains that its decision

CIVIL NO. 98-2286 (JP)            2

to deny benefits under the Plan was supported by substantial evidence, and therefore should be upheld by this Court.

**II.   UNCONTESTED FACTS**

The following facts are uncontested:

1.   From 1976 to May 15, 1996, Cortés was an employee of Sears and worked as a refrigerator technician.

2.   Prior to working at Sears, Cortés completed high school. He has no college education.

3.   Cortés' job as a refrigerator technician required pushing, pulling, twisting, stooping, squatting, and extended reach for 20-60% of the work day.  His job also involved lifting, carrying, and climbing for less than 20% of the work day.

4.   Cortés was a voluntary participant in the Sears Group Long Term Disability Insurance Plan and he paid premiums through salary deductions.

5.   The Plan is governed by the Employee Retirement Income Security Act ("ERISA").

6.   MetLife is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, and is licenced to issue a contract of insurance in the Commonwealth of Puerto Rico.

7.   Cortés submitted a claim for long-term disability (LTD) benefits on July 11, 1996.

8.   Claims decisions on the requests for LTD benefits from the Plan are made by MetLife, which is vested with discretionary authority to construe Plan terms and determine eligibility for and entitlement to Plan benefits.

9.   Prior to receiving LTD benefits, the claimant must complete a Waiting Period; that is, the claimant must be totally disabled (as defined by the Plan) for 140 out of 180 consecutive days.

10.  Cortés applied for disability benefits after a 180-day Waiting Period pursuant to the Plan, which ran through approximately November 11, 1996.

CIVIL NO. 98-2286 (JP)                3

11.  The Summary Plan Description defines "Total Disability" in
     two ways:

     (A)  During the Waiting Period and for the next 24
          consecutive months "Total Disability" means that
          because of illness or injury, you cannot do your own
          job or any other job for which you are reasonably
          qualified based on your education, training or
          experience.

     (B)  After that time period, you will no longer be
          considered Totally Disabled unless MetLife considers
          you to meet the above definition and you are approved
          to receive and/or are receiving Social Security
          Administration benefits due to your disability or
          age.

12.  The Summary Plan Description states as follows with
     respect to the grant of discretion to the Plan
     administrator:

          Sears Roebuck & Company administers the Plan through
          a Plan Administrator.

          The Plan Administrator has the authority to determine
          the questions arising under the provisions of the
          Plan, including the power to determine the right of
          eligibility of associates, participants or any other
          persons, and to remedy ambiguities, inconsistencies
          or omissions.

          MetLife has the responsibility of Claim Fiduciary for
          the provision of full and fair review of claim
          denials, pursuant to Section 503 of ERISA.

          In carrying out their respective responsibilities
          under the Plan, the Plan administrator and other Plan
          fiduciaries shall have discretionary authority to
          interpret the terms of the Plan and to determine
          eligibility for and entitlement to Plan benefits in
          accordance with the terms of the Plan. Any
          interpretation or determination made pursuant to such
          discretionary authority shall be given full force and
          effect, unless it can be shown that the
          interpretation or determination was arbitrary and
          capricious.

CIVIL NO. 98-2286 (JP)                4

13.    The Summary Plan Description states that LTD benefits will
       be denied or discontinued if the claimant cannot provide
       conclusive medical evidence of total disability.

14.    The Summary Plan Description provides that MetLife may ask
       the claimant to undergo a medical examination by a
       physician designated by it when, for example, the
       insured's treating physician cannot substantiate a finding
       of total disability with objective evidence.

15.    Dr. Gerardo Ramos Martín, who completed the attending
       physician's Statement of Functional Capacity form on
       Cortés' July 11, 1996 claim for long-term disability
       benefits, indicated a diagnosis of L5-S1 herniated neculus
       pulpos with paravertebral tenderness, with back pain on
       the right side radiating to the central area of the back.
       Dr. Martín indicated that he was unable to determine
       whether Cortés was totally disabled to do his job, but did
       state that Cortés was not totally disabled to do any job.

16.    On August 26, 1996, MetLife sent Cortés a letter advising
       him that his claim for LTD benefits had been denied, as
       his physician had indicated that he was not totally
       disabled for any and all occupations.

17.    On October 8, 1996, MetLife received by facsimile a
       medical statement by Dr. Ramos Martín indicating that
       Cortés was disabled to do any job because of intense back
       pain. Dr. Ramos Martín further stated that Cortés needed
       medication, prolonged periods of rest, and frequent
       changes of position, which precluded him from engaging in
       any remunerative activities.

18.    By letter dated October 14, 1996, MetLife informed Cortés
       that if it was his intent to file an appeal, that he
       should do so within thirty days, as described in the Plan.

19.    On or about October 19, 1996, Cortés requested an appeal
       of MetLife's decision of August 26, 1996.

20.    On or about October 28, 1996, MetLife requested that
       Cortés submit additional documents in support of the
       appeal of his claim.

21.    On December 18, 1996, MetLife received additional medical
       reports from the State Insurance Fund regarding Cortés'
       condition, including an initial examination, several pages

CIVIL NO. 98-2286 (JP)        5

of office and progress notes which documented Cortés' continued back pain, referrals to physical therapy, and a CT scan.

22. Pursuant to the terms of the Plan, MetLife requested an independent medical evaluation of Cortés' medical records from the Network Medical Review Company ("NMRC").

23. On January 23, 1997, NMRC completed the independent medical evaluation and produced a report signed by Robert L. Bertrand, M.D. ("Dr. Bertrand"), Board Certified Occupational Medicine Physician. Dr. Bertrand concluded that the nature of the claimant's injury, and the medical evidence provided, supported a finding of disability for 6-8 weeks. Bertrand further opined that there was no evidence to support "an inability to work beyond the usual eight (8) weeks of recovery for the type of problem suffered by Mr. Cortés. Return to work with ongoing physical therapy is not an indication of being unable to perform work duties within the noted residual functional capacities."

24. On January 24, 1997, MetLife wrote to Cortés, setting forth the findings of Dr. Bertrand and informing Cortés that the denial of his claim was being upheld on that basis.

25. On or about February 17, 1997, MetLife received a second request for review from Cortés. Enclosed was a letter dated February 11, 1997 from Jaime Rodríguez-Arias, M.D., stating that Cortés' health condition prevented him from working. Dr. Rodríguez-Arias further stated that he believed Cortés' condition would improve with treatment.

26. On April 28, 1997, MetLife received additional medical records from Dr. Rodríguez-Arias, which included a diagnosis and treatment plan, progress notes from various doctors, an MRI reading, and an electromyographic examination. Dr. Rodríguez-Arias indicated that Cortés was not responding to conventional treatment, and that a psychiatric evaluation was recommended due to depression.

27. With this new medical evidence in hand, MetLife requested a second independent medical review from NMRC.

28. By letter dated June 20, 1997, Dr. Bertrand wrote to MetLife reporting that, after a thorough review of the additional medical evidence, there were "insufficient objective medical findings to support an impairment of Mr.

CIVIL NO. 98-2286 (JP)                    6

Cortés of a severity which would change the original opinion of January 23, 1997." Dr. Bertrand explained that abnormal MRI studies showing bulging or herniated discs "may be irrelevant" and not causative of lower back pain. Dr. Bertrand further stated that "the additional information provided supports that Mr. Cortés has continued back pain, however, there is insufficient medical information to support that there is more than a mild impairment due to chronic low pack pain, with retained functional capacity for medium work."

29. MetLife wrote to Cortés on July 1, 1997, describing the evidence before it and concluding that based on the inconsistencies in the evidence, Cortés could not be considered totally disabled.

30. The evidence upon which MetLife based its July 1, 1997 decision is as follows:

(A) a CT scan performed on the lumbar spine on May 20, 1996 noting a small central disc herniation at L5-S1;

(B) MRI studies performed on January 16, 1997 revealing degenerative disc disease at L4-L5 with a small bulging disc;

(C) a January 1997 examination of Cortés by Dr. Scarano García, a neurologist, reporting normal sensation, reflexes and muscle strength, and an ability to straight raise his leg at 50 to 60 degrees bilaterally;

(D) a letter dated February 11, 1997 from Dr. Rodríguez-Arias indicating that Cortés was unable to perform his work duties due to lower back pain, tenderness, and muscle spasms in the lower back; that a treatment plan for rehabilitation had been established; that he should continue to rest at home; and that he should not return to work until he reveals signs of improvement;

(E) EMG studies performed on February 27, 1997 that were reported as normal;

(F) a progress note dated May 3, 1997 indicating Cortés reported continued back pain, but was able to heel and toe walk, and had normal reflexes.

CIVIL NO. 98-2286 (JP)          7

31. On or about September 19, 1997, Cortés sent a letter to MetLife, which MetLife received on or about September 26, 1997, enclosing a medical statement from Dr. Alexis Echevarría, a physiatrist, dated September 11, 1997, and requesting another review of his case.

32. Dr. Echevarría's statement indicated that Cortés was "totally disabled to work" based on Cortés' unresponsiveness to physical therapy, continued pain in the neck and back which was radiating to his right leg, a herniated central disc at C6-C7, a herniated cervical disc with associated cervicodorsolumbar myositis, and a herniated lumbar disc, symptomatic, with associated iliolumbar myositis. Dr. Echevarría stated that Cortés had been referred to a neurosurgeon but that no surgery had been recommended. He further stated that continued physical therapy was not recommended due to Cortes' lack of responsiveness to conservative treatment, and that he had discharged Cortés from his services on August 25, 1997 with a recommendation to continue a therapeutic exercise program and to return only if needed.

33. On October 3, 1997, MetLife wrote to Cortés informing him that the denial of his LTD claim remained unchanged, and that no further administrative appeals were available to him.

34. By letter dated December 30, 1997, Sears forwarded to MetLife a copy of a psychiatric report from Dr. Américo Oms Rivera dated October 6, 1997, and informed MetLife that Cortés had been approved to receive Social Security benefits due to his condition. The letter states that Sears had been trying for a month to get in contact with the representative of MetLife in order to forward that information.

35. By letter dated January 20, 1998, Cortés was awarded Social Security benefits retroactive to February 11, 1997, and was found to be totally and permanently disabled.

36. On January 23, 1998, MetLife wrote to Cortés, stating that the medical information in Dr. Echevarría's statement of September 11, 1997 had been reviewed, but did not support a finding of total disability.

37. MetLife did not consider the psychiatric report of Dr. Oms Rivera or the fact that Cortés had been approved to receive Social Security benefits in rendering its January 23, 1998 decision.

CIVIL NO. 98-2286 (JP)                 8

38. By letter dated February 12, 1998, Sears forwarded to
    MetLife a copy of Cortés' Social Security Disability award
    letter of January 20, 1998, and again forwarded the
    psychiatric report from Dr. Américo Oms Rivera dated
    October 6, 1997.

39. The report of Dr. Oms Rivera states that Cortés is
    "totally and permanently disabled" due to a severe
    psychoemotional condition combined with multiple other
    conditions, including chronic pain.

40. On March 10, 1998, MetLife wrote to Cortés informing him
    that it had received the Social Security Disability award
    letter and the psychiatric report of Dr. Oms Rivera, but
    that MetLife had already performed three reviews of
    Cortés' claim for LTD benefits, on January 24, 1997, July
    1, 1997, and January 23, 1998, and that no further reviews
    would be performed.

41. Cortés was never submitted to a medical examination by
    MetLife.

42. The Plan permits an employee to continue membership in the
    Plan during authorized period of leave if the required
    contributions continue to be paid.

43. Cortés was an eligible participant in the Plan from May
    1996 to May 1998.

44. Cortés' authorized leave of absence for illness expired on
    May 31, 1998.  On that date, he was removed from the
    payroll of Sears.

## III. DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure,
summary judgment is appropriate where, after drawing all reasonable
inferences in favor of the non-moving party, there is no genuine
issue of material fact for trial.  See Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986);
Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993).  A fact is

CIVIL NO. 98-2286 (JP)          9

material if, based on the substantive law at issue, it might affect the outcome of the case. <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510; <u>Mack v. Great Atl. and Pac. Tea Co., Inc.</u>, 871 F.2d 179, 181 (1st Cir. 1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510; <u>Boston Athletic Ass'n v. Sullivan</u>, 867 F.2d 22, 24 (1st Cir. 1983).

**B.    ERISA Standard of Review**

Before entering into the merits of this action, the Court must determine the applicable standard of review. ERISA section 502(a)(1)(B) provides that a participant or beneficiary in an ERISA-qualified employee benefits plan may bring a civil action to recover benefits due him or her under the terms of that plan. <u>See</u> 29 U.S.C. § 1132(a)(1)(B). This Court reviews a denial of benefits under ERISA section 502(a)(1)(B) under a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the arbitrary and capricious discretion standard is employed. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>see also</u> <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996). In determining the standard of review to employ, the Court looks to the terms of the employee benefits plan, and asks whether the plan delegates to the administrator or fiduciary the appropriate level of discretionary authority such as would trigger a more deferential

CIVIL NO. 98-2286 (JP)          10

standard of review.  For a benefit plan to accord discretionary
authority pursuant to <u>Firestone</u>, the First Circuit requires a "clear
discretionary grant."  <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 37 (1st
Cir. 1998); <u>Rodríguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d
580, 583 (1st Cir. 1993).

     The Plan in this case accords discretion to the Plan
administrator and other Plan fiduciaries as follows:

> The Plan Administrator has the authority to determine the
> questions arising under the provisions of the Plan,
> including the power to determine the right of eligibility
> of associates, participants or any other persons, and to
> remedy ambiguities, inconsistencies or omissions.
> . . .
> In carrying out their respective responsibilities under
> the Plan, the Plan administrator and other Plan
> fiduciaries shall have discretionary authority to
> interpret the terms of the Plan and to determine
> eligibility for and entitlement to Plan benefits in
> accordance with the terms of the Plan. Any interpretation
> or determination made pursuant to such discretionary
> authority shall be given full force and effect, unless it
> can be shown that the interpretation or determination was
> arbitrary and capricious.

(Dft's Exh. 3.)  The Plan grants authority to MetLife, as plan
fiduciary, both (1) to determine eligibility for benefits under the
Plan, and (2) to construe the terms of the Plan.  The grant of
authority brings MetLife squarely within the ambit of <u>Firestone</u>'s
provision for deferential review.

     The Court's determination that MetLife's decision should be
subject to an arbitrary and capricious standard of review is
supported by recent First Circuit precedent.  In <u>Terry</u>, the First
Circuit found a clear grant of discretionary authority, consistent

CIVIL NO. 98-2286 (JP)              11

with <u>Firestone</u>, where the plan language specifically allocated to the administrator "the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the plan." 145 F.3d at 37.  By contrast, plan language stating only that the administrator has "exclusive control and authority over administration of the Plan" is insufficient under <u>Firestone</u> to justify the arbitrary and capricious standard of review.  <u>Id.</u> (discussing <u>Cooke v. Lynn Sand & Stone Co.</u>, 70 F.3d 201 (1st Cir. 1995)).

Under the arbitrary and capricious standard, also called the "abuse of discretion" standard, the Plan administrator's decision will be upheld "if it was within [the administrator's] authority, reasoned, and 'supported by substantial evidence in the record.'" <u>Doyle v. Paul Revere Life Ins. Co.</u>, 144 F.3d 181, 184 (1st Cir. 1999) (quoting <u>Associated Fisheries of Maine, Inc. v. Daley</u>, 127 F.3d 104, 109 (1st Cir. 1997)).  Substantial evidence is "evidence reasonably sufficient to support a conclusion."  <u>Id.</u>  The First Circuit has noted that contradictory evidence does not necessarily defeat a finding of sufficiency.  <u>See id.</u> ("Sufficiency, of course, does not disappear merely by reason of contradictory evidence.")

Plaintiffs argue that an elevated arbitrary and capricious standard should govern this Court's review of the denial of LTD benefits because the Plan administrator acted under a conflict of interest.  In <u>Doyle</u>, the First Circuit held that when an ERISA plan administrator has discretionary authority but acts under a conflict

CIVIL NO. 98-2286 (JP)                12

of interest, the Court applies the deferential arbitrary and capricious standard of review, but "with special emphasis on reasonableness." Id. at 183. In order to trigger that elevated standard, however, the claimant must show how the conflict of interest improperly motivated the decision. See id. (citing Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996)). In making such a showing, the Court found it insufficient for the plaintiff to merely "point out" that the award of benefits would come from the plan administrator's own pocket. See id. The Court, however, did not specify what kind of showing would satisfy the "improper motivation" standard.

Just seven months after deciding Doyle, the First Circuit held that a plan administrator-insurer that would be responsible for paying benefits due under an ERISA-governed policy does operate under a conflict of interest, justifying application of the "reasonableness" standard of review. See Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); see also Pitman v. Blue Cross and Blue Shield of Oklahoma, 217 F.3d 1291, 1296 (10th Cir. 2000) (holding that plan administrator that was also insurer operated under conflict of interest). The Court stated that "the requirement that [the plan fiduciary's] decision be 'reasonable' is the basic touchstone in a case of this kind . . . ." Doe, 167 F.3d at 57. The Court, however, did not require the plaintiff to show "how" the conflict affected the administrator's interpretation of the plan. The First Circuit's approach in Doe suggests that to trigger the

CIVIL NO. 98-2286 (JP)          13

elevated  arbitrary  and  capricious  standard,  focused  on
reasonableness, it is sufficient to simply point out a conflict of
interest that exists where the plan administrator is also the insurer
that would be paying out any benefits ultimately awarded.  The Doe
Court was careful not to explicitly overrule Doyle, construing that
case as holding that the plan administrator-insurer's interest in
denying claims that would cost it money did not justify de novo
review.  See id. ("Consistent with Doyle, 144 F.3d at 184, we do not
think that [the plan fiduciary's] general interest in conserving its
resources is the kind of conflict that warrants de novo review.")
In light of Doe, this Court finds that the governing standard of
review in the case at bar, where MetLife operated as both the plan
administrator and the insurer that would be responsible for paying
Cortés' LTD benefits, is the elevated arbitrary and capricious
standard, with an emphasis on reasonableness.  See id.; see also
Terry, 145 F.3d at 36 n. 6 (noting that reasonableness is the
touchstone when applying deferential standard of review).

**C.    The Record Before the Court**

   In reviewing a denial of benefits under the elevated arbitrary
and capricious standard of review, this Court considers "only the
arguments and evidence before the administrator."  Sandoval v. Aetna
Life Ins. & Casualty Inc. Co., 967 F.2d 377, 380-81 (10th Cir. 1992);
see also Doe, 167 F.3d at 57 n. 3; Kiley v. Travelers Indemnity Co.
of Rhode Island, 853 F. Supp. 6, 13-14 (D. Mass. 1994).  The District

CIVIL NO. 98-2286 (JP)              14

Court, however, possesses jurisdiction over the resolution of both factual and legal disputes about the scope of the record to be considered by it.  See Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 836 (1st Cir. 1997).  The instant case presents a question concerning the record before the administrator; in particular, there are two pieces of evidence that the administrator did not consider, and the issue is whether they ought to form part of the record on review.  Because the parties submitted this case to the Court for resolution based on their pretrial motions (docket No. 45), the Court will resolve this issue without a hearing.

The issue concerns whether the psychiatric report of Dr. Américo Oms Rivera, dated October 6, 1997, and the award of benefits by the Social Security Administration, should have been part of the record considered by the administrator.  Here, it is uncontested that MetLife conducted a final review of Cortés' claim for LTD benefits, denying the same by letter dated January 23, 1998.  The parties do not dispute that the January 23, 1998 letter states that the only new evidence considered by MetLife was a September 11, 1997 statement of Dr. Echevarría.

In "the record" submitted to this Court is a letter dated December 30, 1997 from Sears District Human Resources Assistant Manager Josie Martí, informing MetLife that Cortés had been approved to receive Social Security benefits due to his condition and forwarding to MetLife a copy of a psychiatric report from Dr. Américo Oms Rivera dated October 6, 1997.  The December 30, 1997 letter also

CIVIL NO. 98-2286 (JP)                    15

states that Sears had been trying for a month to get in contact with the representative of MetLife in order to forward that information. The report of Dr. Oms Rivera states that Cortés is "totally and permanently disabled" due to a severe psychoemotional condition combined with various physical conditions. There is no indication, however, that MetLife took this evidence into account in its final denial of LTD Benefits.

MetLife asserts that it did not receive the evidence until Sears again forwarded it to MetLife on February 12, 1998, subsequent to MetLife's third and final denial of benefits. The Court is perplexed, however, by the inclusion of the December 30, 1997 letter in the record submitted to this Court by MetLife, as such is inconsistent with the contention that it was not received. In fact, in light of the lack of proof that MetLife never received the letter, in the form of an affidavit or otherwise, the Court considers it an uncontested fact that the letter and the report of Dr. Oms Rivera were sent to and received by MetLife. The Court finds that MetLife erred in failing to consider the December 30, 1997 letter informing the award of Social Security benefits and the October 6, 1997 report of Dr. Oms Rivera in the final consideration of Cortés' claim for LTD benefits. See Recupero, 118 F.3d at 830, 833-34 (noting that district court's resolution of disputes about the scope of the record on review is typically not deferential).

The psychiatric report is significant because it illuminates an important emotional aspect of Cortés' alleged disability. It

CIVIL NO. 98-2286 (JP)            16

constitutes strong evidence of disability based on the combination
of physical and emotional conditions, and is uncontradicted in the
record.  The fact of the Social Security award of benefits is also
highly material.  See Pierce v. American Waterworks Co., Inc., 683
F. Supp. 996, 1000-01 (W.D. Pa. 1988) (finding that administrator
acted in an arbitrary and capricious manner in denying benefits by
relying in part on an award of Social Security benefits); see also
Kirwan v. Marriott Corp., 10 F.3d 784, 790 n. 32 (11th Cir. 1994).
The Plan at issue in this case itself defines Total Disability in
part by reference to an award of benefits by the Social Security
Administration, thus rendering this evidence particularly relevant
to the administrator's determination.

   **D.  Review of Denial of Long Term Disability Benefits**

   After reviewing the standard for "Total Disability" under the
Plan and the evidence before MetLife, the Court concludes that
MetLife abused its discretion in denying Cortés' claim for disability
benefits.  According to the terms of the Plan, in order for an
employee to be considered totally disabled, the employee must be
completely and continuously unable to perform each of the material
duties of the employee's job; unable to perform any job for which the
employee is qualified based on his or her education, training or
experience; and require the regular care of a doctor.  (Dft's Exh.
4, at 9.)  MetLife denied Cortés' claim for disability benefits on
January 24, 1997 and July 1, 1997, finding that although Cortés had
a degenerative condition of the lumbar spine, chronic lumbar

CIVIL NO. 98-2286 (JP)                 17

myositis, and chronic low back pain, this condition was not disabling in accordance with the Plan terms. After Cortés submitted supplemental medical information, MetLife again found Cortés not disabled on January 23, 1998. This Court finds that MetLife's final decision is not supported by substantial evidence in the administrative record.

MetLife based its denial on an examination note dated January 15, 1997 reporting Cortés' ability to straight-raise his leg to 50 to 60 degrees bilaterally with no abnormalities in reflexes, muscle strength or sensation; an EMG study performed on February 27, 1997 reported as normal; and a progress note dated May 3, 1997 in which Cortés was again able to straight-raise his leg at 50 to 60 degrees bilaterally, was able to heel and toe walk, and had normal reflexes. MetLife further relied on an evaluation of the evidence by Dr. Robert L. Bertrand, an Occupational Medical Physician of the Network Medical Review Company, who posited that abnormal MRI studies showing bulging or herniated discs "may be irrelevant" and not causative of lower back pain. (Dft's Exh. II, at 92.) Based on these doctors' notes and Dr. Bertrand's opinion, MetLife concluded that there was no clinical correlation between Cortés' complaints of lower back pain and the MRI findings. (Id., at 95.)

Additionally, the record contained the statements of several treating physicians. These statements provide evidence that while initial medical assessments of Cortés' physical condition did not reflect that he was totally disabled, his failure to respond to

CIVIL NO. 98-2286 (JP)                18

treatment and the development of additional physical and emotional
conditions led Cortés' physicians to concur that he was indeed
totally disabled.    For instance, Cortés' treating physician, Dr.
Gerard Ramos Martín, initially had indicated in Cortés' July 11, 1996
claim for LTD benefits that Cortés was not disabled to do any job.
By October 6, 1996, however, Dr. Ramos Martín stated that Cortés'
condition preventing him from performing any type of work because of
a herniated disc and intense back pain.    In addition, Dr. Jaime
Rodríguez-Arias, another treating physician, opined on February 11,
1997 that Cortés' condition prevented him from working, but that he
believed his condition would improve with treatment.    On April 15,
1997, however, Dr. Rodríguez-Arias stated that Cortés was not
responding to conventional treatment and that a psychiatric
evaluation was recommended due to depression.    The September 11, 1997
statement of Dr. Alexis Echevarría, a treating physiatrist, stated
that Cortés was "totally disabled to work" based on his
unresponsiveness to physical therapy, continued pain in the neck and
back which was radiating to his right leg, a herniated central disc
at C6-C7, a herniated cervical disc with associated
cervicodorsolumbar myositis, and a herniated lumbar disc,
symptomatic, with associated iliolumbar myositis.    Moreover, the
psychiatric report from Dr. Américo Oms Rivera, dated October 6,
1997, which was not considered by MetLife, states that Cortés was
"totally and permanently disabled" due to a severe psychoemotional
condition combined with multiple other conditions, including chronic

CIVIL NO. 98-2286 (JP)          19

pain.  Finally, as discussed above, MetLife was notified that Cortés

had been awarded Social Security benefits before finally denying his

disability claim.  This fact, however, was not considered by MetLife

in denying Cortes' claim for LTD benefits.

MetLife's wholesale disregard of the opinion of three treating

physicians and one treating psychiatrist that Cortés was totally

disabled to work, its indifference to Cortés' subjective reports of

pain throughout the record, and its reliance on the speculation of

an occupational medicine physician who has never interviewed or

examined the patient that MRI findings of herniated and bulging discs

in both the cervical area and lumbar area do not support a finding

of chronic back pain, was not reasonable and renders MetLife's

decision arbitrary and capricious.  See Govindarajan v. FMC Corp.,

932 F.2d 634 (7th Cir. 1991) (plan administrator's decision arbitrary

and capricious where administrator concluded there was no physical

cause for plaintiff's back pain notwithstanding numerous reports from

treating physicians that plaintiff suffered from herniated disc and

lower back pain, and was totally disabled due to this condition);

Roig v. The Limited Long Term Disability Program, Civ. A. 99-2460,

2000 WL 1146522 (E.D. La. Aug. 4, 2000) (finding Plan administrator

abused its discretion in finding plaintiff not disabled where no

substantial evidence existed in the record to rebut the treating

physician's finding of disability); see also Pollini v. Raytheon

Disability Employee Trust, 54 F. Supp.2d 54, 59-60 (D. Mass. 1999)

(finding administrator's denial of benefits arbitrary and capricious,

CIVIL NO. 98-2286 (JP)                20

in part for failing to credit subjective evidence of pain in medical records).    Moreover, MetLife did not interview Cortés, did not independently observe his activities, and did not order an independent medical examination.    Although independent evidence-gathering is not necessary in every case, in this case, the Court concludes that the record does not contain substantial evidence in the record to support a finding that Cortés is not totally disabled. The Court further notes that MetLife's selective, and unexplained, failure to consider two important pieces of medical evidence in rendering its final decision is a substantial factor leading this Court to conclude its decision was unreasonable.    See Govindarajan, 932 F.2d at 637.

### E.    Relief

It is proper for the Court to "retroactively grant disability benefits without remanding the case where there are no factual determinations to be made." Williams v. International Paper Co., No. 98-6514, 2000 WL 1396608, *8 (6th Cir. Sept. 27, 2000).    In Williams, the Sixth Circuit retroactively granted disability benefits, rather than remanding the case, where it concluded that the district court erred in finding the claimant was not disabled.    See id.; Godfrey v. BellSouth Telecomms., Inc., 89 F.3d 755, 760-61 (11th Cir. 1996) (holding that retroactive award of benefits proper remedy where district court made finding that claimant was disabled); see also Canseco v. Construction Laborers Pension Trust for S. Cal., 93 F.3d 600, 609-10 (9th Cir. 1996), cert. denied, 520 U.S. 1118, 117 S. Ct.

CIVIL NO. 98-2286 (JP)          21

1250, 137 L.Ed.2d 331 (1997) (concluding that remand appropriate where administrator erroneously construed plan provision, but not where no factual determinations remain to be made). Similarly, this Court has determined that the administrator erred both in finding Cortés was not totally disabled according to the terms of the Plan and in selectively failing to consider two important pieces of evidence. See Govindarajan, 932 F.2d at 637 (retroactively awarding benefits, rather than remanding, where denial of benefits based on selective review of evidence).

Accordingly, the Court **FINDS** that Cortés has been totally disabled since October 6, 1997, and hereby **AWARDS** long-term disability benefits to Cortés retroactively to April 6, 1998, according to the terms of the Plan.[1]  The Plan provides disability benefits equal to sixty percent of a claimant's first $12,500 of his or her monthly covered earnings, subject to a reduction for any benefits paid during the disability period, including Social Security benefits. The parties **SHALL**, on or before **November 1, 2000**, submit to the Court evidence of Cortés' monthly covered earnings, the Social Security benefits currently received by him, and a proposed

---

[1]As stated earlier, the Summary Plan Description provides that LTD benefits are payable after the employee completes a 180-day waiting period.  The policy further states that the waiting period (also called the "elimination period") begins "on the first day of Total Disability." (Dft's Exh. 4.)  Because the Court finds that Cortés was disabled as of October 6, 1997, the award of LTD benefits would be subject to the six-month waiting period, and would begin, then, on April 6, 1998.

CIVIL NO. 98-2286 (JP)            22

calculation of these figures according to the Plan's terms in order to finalize the judgment.

## IV.  CONCLUSION

In light of the foregoing, the Court hereby **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.   Judgment **SHALL** be entered for Plaintiff Juan de Dios Cortés, awarding him long-term disability benefits under the Sears Roebuck & Co. Group Long Term Disability Insurance Plan, corresponding to a finding of total disability beginning on October 6, 1997.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of October, 2000.

JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE